Johnson J,
The'first ground of this motion embraces a propositionAvhioh^as a general rule, cannot be controverted, that? the -indeXerm! a promissory note must demand payment of the drawer, before he can charge the iijdorser. This rule, it is true admits of numerous qualifications, or rather supersedes the necessity of a personal demand in a variety of instances which would impose on the holder an unreasonable degree of labour and inconvenience; and it has been contended in opposition to this motion, that where the drawer has left the place at which he resided at the time the note was drawn, the case falls within this class of exceptions and that the holder is not bound to enquire further after him. And in support of this position, the cases of Stewart vs. executors Eden, 2 Caines 121, and Ogden et al. vs. Cowley, 2 Johnson 275, have been relied on-. In' the first of these cases, the drawer had a house on Long Island; and a store in New York, at the latter of which the presentment was made and payment was demanded of his clerks, who answered that he had gone into the country and had left no instructions. In the latter case, the- notary called at the house of the drawer, in the city of New York, which he found shut up, and was informed, that he. also had gone into the country. It is impossible to reconcile these cases to the general doctrine on the subject without supposing that they proceeded on the ground that the drawers had not changed-their residence, or that the holders were unable to discover to what places they had removed; either of which would have dispensed with a personal.demand; and with this qualification they do not sustain the position contended for. In point of fact, however, it does not appear to me, that they are analogous to the case under consideration. Judging from the evidence, the strong probability is that Mr. Fishburn had no permanent residence in town. His residence here was the temporary residence of a student at law, and that only for the winter. He had no house, and his lodgings were probably changed as often as caprice or convenience required, and it does not appear that *398 enquiry was made either at his boarding house, or at the office where he studied. His permanent residence, if indeed he had any, was in St. Bartholomew’s Parisli, - and all these circumstances are presumed to have been known to the plaintiff. If they were not, an enquiry of any one who knew any thing about him would have led to it; so that according to the view taken of the cases relied on, it does not fall within . . them. But I take it that it is a well settled rule that when the drawer of a bill of exchange, or the maker of a promissory note, has removed from the place where the bill or note represents him to reside, and for the same reason where he did re* side at the time the bill was drawn or the note made, the holder is bound to use every reasonable endeavour to find out whither he has removed, and if he succeed, present it for payment. (Chitty on Bills’ 334-5. Riley’s Ed. 1821, and the cases there cited.)' And if we examine into the nature of the contract between the indorsee and indorser, we must admire its reasonableness and good sense, however arbitrary the rule itself may be in terms. The indorsement is literally and substantially an order on the maker of a note to pay the amount to the indorsee. Its object, therefore, cannot be attained without its presentment, and hence the obligation which it. imposes on the indorsee, and if he intends to discharge it, the enquiry would suggest itself, where does he reside, or. where is he to be found? He knows too that our places o.f residence are changed as often as interestor fancyprompts, and he takes it, subject to that inconvenience; as a part of the contract,, therefore, the rule imposes no hardship, especially when qali-fied by the exceptions which dispense with a demand, where the maker has absconded or removed into a distant country.
On the second ground also, the defendant is clearly entitled to a new trial. It is not necessary, I am aware to endorse a note payable to bearer in order to transfer it; that may be done by delivery. For the plaintiff, it is contended, that such an, indorsement is in effect a b'illof exchange drawn by the in-dorser on himself, and that, therefore, it is not incumbent on *399 the indorsee to look elsewhere for the payment; end Eller’s N. P. 273, 7th Ed. by Bridgman, is relied on as an authority in point. The case of Wilmorc vs. Young, said to have te.-n decided by Eyre, at Guildhall M. 1. Geo. II. is referred to in support of the text, where it is said that to charge the indor-ser of a note payable to bearer, it is not necessary, to make a demand on the drawer, because “ the indorser is in nature of an original drawer.” tíowever we may venerate the opinion -of that learned judge, as a nisi prius cs.se,\t cannot be regarded as conclusive authority; and if we adopt the reason on which it is founded, it proves too much, and is destructive of the whole fabric which has been founded on the theory of indorsements. Every indorsement is equivalent in its effects to drawing a new bill, and the indorser in almost every respect is considered as anew drawer: (Chitty on Bills 183,) and if that reasoning prevail, there would be no necessity in any case to make a demand on the drawer of a bill, or the makerofanote. Whatever similitude the indorsment of a note payable to bearer may have to a bill of exchange, and however nearly the in-dorser may be assimulated to an original drawer, it is evident from the nature of things that something more was intended and must be implied than belong to these relations, if he intended only to charge himself, why let it be asked, did he not do so by making his promisory note, or drawing a bill -on himself in the usual way? Why pul beyond the reach of his control a fund which might possibly enable him to meet •it, -by endorsing and delivering the note? A conclusion so much at war with common sense will never be imputed to such astute and intelligent men as compose the mercantile community. The indorsement ofsuch a paper must, therefore, mean something more than a mere charge upon the indorser, and I am suable to see any reason why it should be distinguished from the ordinary case-of indorsing a note payable to order. So far as it goes to charge the indorser the effect is the same, and although it may not be indespensably necessary to enable the indorsee to make a demand on the drawer, yet it is calculated *400 to remove any suspicions that might arise as to the manner in which he obtained the possession. There cannot, therefore, exist any good reason why it should not impose the same obligation on the indorsee to make the demand on the drawer of the note; and with the exception of the case noticed, the books contain no such distinction. On this ground, therefore, the motion is granted.
An argument in opposition to the motion has been drawn from the circumstance that the note was dated at Charleston, and hence it is concluded that it is made payable there, and as such the plaintiff was not bound to present it for payment elsewhere, but this question is concluded by the case of Miller & Co. vs. Thompson, (a) decided during this term. The place at which it is to be paid is not necessarily indies • ted by the place at which it is dated.
Petigru h Cruger, for the motion.
Clarke, contra.

 Not reported, as it contains no other principle than as stated above.