Livingston, J.
delivered the opinion of the court. II the maker, when' a note falls due, cannot be found, nor payment demanded of him personally, should not the declaration state that fact specially, instead of averring, generally, “ that the note was presented and payment refused ?” This is the first question made in this cause. It is agreed, that the plaintiffs might have stated what particular diligence they used, in lieu of alleging, as they have done, that the note was “ presented to the maker, and by him dishonoredbut it has been most usual to pursue the latter course, and no good reason can be assigned for departing from it. Under an averment of the note’s being presented, the party has hitherto been permitted to give evidence of any diligence which is deemed equivalent to *126 an actual presentation of it to the maker. Precedents are generally this way, and if in some, the whole matter intended to be insisted on as evidence of a demand be set forth, it only proves that either form is good. In Saunderson and others v. Judge, 2 H. Bl. 510, the declaration stated that “ the note was presented to the maker for payment.’’ No demand, however, had been made of him, for he had absconded, and could not be found. The judge, therefore, nonsuited the plaintiffs, supposing an actual demand necessary. This nonsuit was set aside, although it was contended, as here, that the plaintiffs, having averred that the note was presented to the maker in person, ought to have been held to proof of that fact. The court disregarded this objection, and recognized the principle that due diligence in the holder to obtain payment, without an actual demand, is good evidence to support such averment. It is true, that in Bayley on Bills, p. 110, it is said, “ that if a note be alleged to be presented, and payment refused, evidence cannot be given of the maker’s not being found but this is a decision at nisi jprius, on which it would be capricious to alter a practice of declaring, *vvhich has been pretty uniformly followed, since the introduction into general use of bills of exchange and promissory notes. The case of Starke v. Cheesman, from Carthew, so much relied on by defendants, prove nothing more than that it is sufficient to aver that the drawer of a bill was not found, without stating that inquiry had been made after him, and that such form of declaring is good. This is not disputed.; but it does not follow that no other form will do. My opinion therefore is, that the present averment was sufficiently supported by testimony, that the makers, on inquiry at their store, could not be found; and that payment was therefore demanded of a clerk, who said they were out- of town, and had left no instructions to pay the note. 2. Ought notice of the maker’s default to have been sent to the endorser’s country house ? The note being dated in New-York, the maker and endorser arepre- *127 Burned to 'have resided, and contemplated payment, there. It is admitted, indeed, that tbe endorser did reside in tbe city at tbe time of its date, for it is stated, that shortly thereafter be went to bis country seat, shutting up his house in town. We must talce care that, while proper diligence be imposed on the holder of negotiable paper, we do not exact from him every possible exertion that might have been made to affect an endorser with knowledge of its being dishonored. If he has done all that a. diligent and prudent man could naturally and fairly do under like circumstances; if the law has prescribed no certain way of sending a notice in the given case ; if the endorser’s own conduct has rendered it somewhat difficult to determine in what way the notice ought to be given; and especially, if from what has been done, it may reasonably be presumed that notice has reached the parties concerned, we should be satisfied, and not ask for more. Endorsers, therefore, cannot complain, if notices of this nature are permitted to be left at their houses in town notwithstanding their removal into the country during the hot months. It is more reasonable that they leave a person in town to attend to their business, than that the holders of their paper be put to the trouble of finding out to what part of the country they have removed and sending after them. It is also probable, especially when the distance between the two houses is only four miles, as it was here, that some communication "will be kept up between them, and that a letter left at the dwelling in town will not be long in finding its way to the country. I speak now of a temporary residence in the country; for a permament removal from the city might render a different course necessary. Nor was it fatal to direct the notice to the endorser himself; for as it was not known whether he had made a will, nor who is executors were, until long after, it was full as probable that it would reach the parties interested by this address as by any other; some one of the deceased’s family would either open it, or see it safely delivered to an exeeu *128 tor. The notice, therefore, was well served, and its address proper. 8. What is to be the effect of the writing given to Warning, one of the makers of this note? The defendants cannot complain of this transaction, nor should they be permitted to derive any benefit from it, unless their remedy against the makers, or either of them, be affected by it. If we understand this paper according to the obvious meaning of the parties, and its own import, (and why should it not be so understood ?) we may give to it every effect it was intended to produce, without impairing any right of the defendants. The plaintiffs were willing to release Waring, but only on condition of his remaining liable to the representatives of the endorser, and to those to whom they might pass the note. This was necessary to secure their own recourse on the executors of Eden’s will. Nor is the exception repugnant to the main object of the release, if it may be so called; for Waring might have set-off against Eden’s estate, and therefore be willing to remain liable to his representatives. This instrument, therefore, is no bar to the present suit. 4. Ás Medcalf Eden died long before the note became due, it is contended that- the evidence not only does not support the promise alleged to have been made by him, on the 8th of November, 1798, which was after his death, but shows that it was impossible he could have made it. Averse from nonsuiting the plaintiffs, and thus turning them round to another action, we have been anxious to overcome this objection, but after the best reflection it appears to us fatal to the present suit. Although, when the holder of a note has done all that is required of him, the law implies an undertaking on the endorser’s part, yet where the condition on which *tkis promise arises happens not until after his death, the assumpsit devolves on his executors, to avoid the absurdity of a dead man’s contracting The assumption, as here laid cannot be made good by relation to the date of the note, or endorsement, for it is not merely'because of his endorsement that Eden was liable. There must first be a default in the *129 maker, and certain acts done, or diligence used by, tbe bolder. It is accordingly stated in tbis declaration, tbat by reason of a demand of tbe maker, and non-payment by bim, and notice thereof to Eden, be became liable, and being liable, he promised, in bis lifetime, to pay, &e. but it appears in evidence tbat Eden bad been dead near two months before be is said to have made tbis promise. There can be no necessity for declaring in tbis way, when it would have comported with the truth, and answered as well as to have stated a notice of non-payment to tbe defendants, and an assumpsit by them. The only case in any degree resembling tbis, is tbat of Deane v. Crane, in 6 Mod. 309. An executor bad declared on a promise made to bis testator above six years before the action brought, on non as-sumpsit infra sex annos; it appeared tbat the defendant bad made a promise to the executors, after the testator’s death, but before any action was brought; all tbe judges agreed, on tbe case being referred to them, tbat tbe evidence did not support tbe declaration, but that tbe executor should have declared on a promise made to himself; so neither here does the evidence support the declaration, which should have been on a promise made by the executors. A non-suit must, therefore, be entered in conformity with the agreement of tbe parties. This renders it unnecessary to say what judgment should be rendered against Martha Eden, because, if another action be brought, she can plead separately, and thus avoid her present embarrass ment. Tbe other points have been disposed of to prevent their being brought up again in the next action.
Judgment of nonsuit.