## Barnes' Executors, Appellants, *v.* Reynolds *et al.*

If the holder of a note against a deceased endorser does not know, or by ordinary diligence could not have ascertained who were the legal representatives, notice directed to the endorsers in person will be sufficient.

In an action against executors on a promissory note endorsed by the testator, a special count alleging a promise by the executors to pay, &c. is supported by proof of endorsement ; the law implies the promise on the part of the executors.

The holder of a note endorsed in blank, may fill it up after the death of the endorser.

APPEAL from the circuit court of the county of Claiborne.

This was an action of *assumpsit* against appellants, as executors of John A. Barnes, deceased, on a promissory note, made by Daniel Willis and by John A. Barnes and Allen Bridyers, endorsement dated March 5th, 1833, due four months after date, at the United States Bank, at Natchez, for $5,000. It further appeared that the blank endorsement was filled up after the death of Barnes. The note was protested July 8th, 1833, and notice sent by first mail to Port Gibson, directed to John A. Barnes.

Barnes died at Jackson, Mississippi, in January or February, 1833, being a member of the legislature, then in session, from Claiborne county. On March 25th, 1833, letters testamentary were granted to the appellants. The appellees lived in Natchez, 110 miles from Jackson, and 47 miles from Port Gibson; John A. Barnes lived near Port Gibson, so also did his executors. Verdict for appellees, November term, 1836, set aside by Judge Bodley, on motion for a new trial. At a subsequent trial there was another verdict rendered for appellees.

On the 11th day of the same term appellant moved for a new trial, for these reasons.

1. Because the verdict is contrary to law and evidence.

2. Because the court erred in refusing to give the following instructions, asked by appellant's counsel to the jury, to wit:

" If the jury believe from the evidence that John A. Barnes died in January or February, 1833, and had executors March 25,

1833, then the notice directed to John A Barnes is not sufficient to charge the defendants as executors, unless they believe from the evidence that the plaintiff exercised reasonable diligence to ascertain those facts, or that by the exercise of reasonable diligence, they could not have ascertained those facts."

It was also alleged that the evidence did not sustain the declaration. There were three counts in the declaration.

First count states a notice to John A. Barnes, 8th July, 1833, in his life time, and his liability and promise to pay in consideration thereof, &c.

Second count states a notice to defendants, as his executors, and their liability and promise to pay in consideration thereof, &c.

Third count states the indebtedness of John A. Barnes, July 8, 1833, for money had, &c., and his liability and promise to pay in consideration thereof. Plea of general issue.

The motion for a new trial was overruled, and exceptions taken to the opinion of the court, and an appeal prayed and granted.

Chaplain for appellants.

The first position we shall assume will arise under the first reason assigned for a new trial, to wit: That verdict was contrary to law and evidence.

There were three counts in the declaration.

First count states a *notice to John A. Barnes*, 8th July, 1833, in his life time, and *his* liability and promise to pay in consideration thereof, &c.

Second count states a *notice to defendants as his executors*, and *their* liability and promise to pay in consideration thereof, &c.

Third count states the indebtedness of Barnes, July 8th, 1833, for money had and received, &c., and his liability and promise to pay in consideration thereof.

On the 8th July, 1833, the time when John A. Barnes is stated in the *first* and *third* counts, to have *"promised, &c.,"* he had been dead 4 or 5 months at least, and the case in 2 Caine's Rep. 128—9, is incontrovertible authority to show that neither of those counts is sustained by the evidence; if neither of those counts is sustained by the testimony, then there could be no finding by the jury under them; and if the finding of the jury had been

under them, (supposing them the only counts,) the court would be bound to set it aside. Now let us see if there was, or could have been a finding by the jury under the *second* count; the only plea pleaded by the appellants, was in the following words, to wit: " And the said defendants came and defend the wrong and injury when, &c., and say that the said John A. Barnes in his life time, did not promise and assume in manner and form, as the said plaintiffs have alleged in their declaration thereof against them, and of this they put themselves upon the country." To this plea a *similiter* has been joined.

The court will remember that this plea does not traverse the allegations of the *second* count, but only those of the *first* and *third* counts.

The jury were trying the issue joined, which was, whether " *Barnes in his life time promised, &c.,*" as was stated in the *first* and *third* counts ; the court upon the authority in 2 Caines will not hesitate to say the evidence does not sustain the allegations in the first and third counts, that Barnes "*promised, &c.*" So far then as those two counts are concerned, the verdict must be set aside; and it cannot reach the second count and its allegations, because it was a finding upon an issue which did not embrace or traverse the fact, whether the defendants, as executors "*promised.*" I might rest the case here with perfect safety, in my humble opinion, but will briefly present another point which arises under the same cause assigned for a new trial, to wit : that the verdict was contrary to law and evidence. The note bears date sometime after Barnes' death by the evidence. That is a circumstance, which if unexplained, (as it is,) fully authorised the jury to regard the note as fraudulent. The evidence shows Barnes could not have endorsed it on 5th March, because he was dead; if the date was a mistake, then the plaintiffs ought to have proved it; but the most natural presumption is, that it had no date when endorsed by Barnes, that he endorsed a blank paper. The construction of law is that it was a blank authority to fill it during his life. It is evident the note was either filled up after his death, or was changed as to date; the plaintiffs ought to have removed the presumption of fraud arising upon such circumstances, by proof.

Many advantages may be gained by changing the date of a

note—the proper day for demanding payment may have passed —it would then be very convenient to change the date. The fact of its being dated after the death of Barnes, authorises, in fact demands of the jury to presume against it.

The verdict of the jury was contrary to law and evidence.

The note sued on was payable at the Branch Bank of the United States Bank at Natchez, (see page 5 of record.)

Mr. Tryon's statement is that he went to the " Office Bank of United States," demanded payment, &c.   He does not say where said bank was, whether in Natchez, or elsewhere.   Consequently no good demand is shown.

The last point is that the court erred in refusing the charge asked by appellant's counsel.

Barnes died in January or February, 1833—had executors March 25th, 1833—note matured July 8th, 1833.

I wished the court below to leave it to the jury to say, from all the circumstances, whether appellees (living forty-seven miles off) did not know Barnes was dead and had executors?   The court would not put the plaintiffs below to any enquiry as to who were executors until the appellants brought knowledge of the death of Barnes home to them.   The notice was sent to Barnes—question is, was it a good notice?

" If a party be dead, notice should be sent to his executors or administrators."   Chitty on Bills, page 228—529 in some editions.

This is a general rule, and if not complied with, the party must show a lawful excuse.

Suppose Barnes had been next door neighbor to plaintiffs in a city, and had died four months before maturity of note, and notice had not been sent to his executors, but to Barnes, would the executors have been bound to bring the knowledge of the death of Barnes home to plaintiffs, or would it have been left to the jury to say, from all the circumstances, whether they (plaintiffs) knew it.

The liability of an endorser is contingent upon his having notice.   If he be dead, his executors or administrators must have it. If he be dead and notice be not given his executors, but sent to deceased, must not an excuse be given for it?   As that from all the circumstances it was not likely they should know of the death.

I have submitted the remarks upon the last point with less confidence than I would have done, had I not known the opinion of the court upon this point to have been expressed.

Thrasher for appellees.

The only question involved in this case is, whether, in order to render the executor of the endorser of a promissory note liable, which was payable at a particular place, some 60 miles from his residence, it was first necessary to prove that reasonable diligence had been used by the holder, to ascertain if the endorser was dead; and if dead, then to send notice to the address of his executor.

If the endorser of a note be dead at the maturity thereof, and that fact be known to the holder, as well as the fact of his having executors, and who those executors are, notice should no doubt be sent to his executors. 17 Johnson's Rep. 25.

But it is in no case the duty of the holder, or of the notary who protests a note, to use due diligence to ascertain whether he be dead or alive before he gives notice, or any thing else but his residence; and to direct the notice to his own address, at the proper place of his residence. Such a notice is good and will bind his executors. 2 Caine's Rep. 121.

In the case of Stewart *v.* Eden's executors, 2 Caine's Rep. 128, Judge Livingston decided that a notice directed to the deceased, was a proper address and a good notice. "Nor was it fatal," says he, "to direct the notice to the endorser himself, though long dead, for it was not known whether he had made a will, nor who his executors were; and it was fully as probable that it would reach the parties intended, by his address as by any other. Some one of the family of the deceased," says he, "would either open it, or see it safely delivered to an executor. The notice was, therefore, well served, and its address proper," which was to a deceased endorser.

In the case under consideration, the endorser died at Jackson, in February, 1833, 110 miles from the place where the note was made payable, and he resided 50 or 60 miles from the place. The note was protested on the 8th July, 1833. The notary public swears that he did not know of the death of the endorser, at the time of the protest and notice; and there is no authority, nor is

[Barnes' Executors, Appellants, *v.* Reynolds *et al.*]

there an adjudged case to be found, which requires the holder of a note, payable at a particular place, after protest and before notice, to inquire whether the endorser be dead, and if dead, then who his executors are, and to send the notice to them. Such inquiries would certainly make the notary cut a very odd figure in the streets; and such information, in case of a distant endorser, could seldom be obtained, even if inquiry were necessary.

But, according to the bill of exceptions, the court did charge the jury, "that if the holders of the note knew of the death of John A. Barnes, at the time of the maturity thereof, and that they could by ordinary diligence have ascertained that there were executors or administrators, and who they were, notice ought to have been given to them. But if they did not know of the death, or by ordinary diligence could not have ascertained who the executors were, a notice to John A. Barnes, at his residence, was sufficient."

The shades of difference, if any, between the charge given by the court, and the charge asked by the defendant's counsel, shows that this case was brought up for delay, and that the judgment of the court below must be affirmed, even admitting the charge asked for by defendant's counsel to be law, the jury are the sole judges of the evidence.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The plaintiffs in error were sued on an endorsement made on a promissory note by their testator in his lifetime. The note matured after the death of the testator, and notice was directed to him at the place of his residence. It was insisted on the trial that notice should have been given to the executors, and that it was incumbent on the holder to use due diligence to ascertain whether he was dead or living, and the court was requested so to charge the jury, which charge the court refused to give, but charged the jury that if the holder knew of the death of the endorser and could, by ordinary diligence, have ascertained who were executors, then it was incumbent on him to give notice to them, but if the holder did not know of his death, or by ordinary diligence could not have ascertained who were executors, then notice directed to Jno. A. Barnes, the intestate, was sufficient.

The charge of the court was strictly correct. The law does not

in such cases raise a presumption that the endorser of a promissory note is dead, and impose on the holder the duty of enquiring after his executors; on the contrary, it presumes that he is living, and that the holder will be justified in acting on this presumption, unless it be shown that he knew of the death of the endorser, which showing devolves on the executors before they can object to the sufficiency of the notice. As a legal proposition it is certainly true that notice should be given to the administrator or executor of a deceased endorser, but this proposition necessarily pre-supposes a knowledge on the part of the holder, that the endorser is dead. He who objects to the sufficiency of notice which appears to have been regularly given, must show the ground of objection.

It is insisted that the proof does not support the declaration. There are three counts: the first, laying the liability and promise to pay by the testator; the second avers a liability and promise by the executors. The authority referred to in 2 Caines, 121, is directly in point as regards the first count. The promise being laid as by the testator, was not supported by an endorsement on a note which fell due after his death, but the second count, in which the promise is laid as having been made by the executors on the liability accruing after the death of the testator, by the failure of the maker to pay, is sustained by the proof, the law implying a promise, on the liability, and the notice was good under this count.

The endorsement appears to have been made after the death of the endorser, but it is said by counsel to have been done under a blank authority given in the testator's lifetime. This was not made a point in the defence in the court below, nor is it raised in this court, but seems to be tacitly waived, and we do not therefore notice it.

The judgment must be affirmed.

A re-argument was awarded in this case, and at the present term Mr. Justice TROTTER delivered the following opinion:

This cause was decided at the last January term of this court. A re-argument was ordered, and the attention of the court was called to several points not noticed in the former opinion. It was

[Barnes' Executors, Appellants, *v.* Reynolds *et al.*]

insisted upon the late argument of the case; that Barnes the testator of the defendants, having endorsed the note which is sued on, in blank, and having died before the blank was filled up and dated, the authority to fill up the blank ceased at his death, and that as the date of the endorsement is subsequent to his death, it was erroneous to allow it to charge him as endorser, without further explanatory proof. It is a well settled principle, that if a person endorse his name on a note, in which a blank is left for the date, and leave it with the maker, it is an authority to put such date upon it as he pleases, and the endorser will be liable, even if it is dated before the time when the endorsement is actually made. Bayley on Bills, 146. And if a man endorse a bill with blanks for sum and date, and die before it is filled up, such previous death can form no objection to the filling up of the date or sum. Bayley on Bills, 146. 4 Camp. 97. We are therefore, not inclined to change the former opinion on the ground of this objection. It was also insisted that as the note in this case had in the course of negotiation returned to the hands of the maker, it could not be again put into circulation. The principle of this objection is fully recognized by the court. But the fact no where appears upon the record that this note was ever paid by Willis, the maker, or otherwise came to his possession.

It was also urged as an objection to the verdict, that it was not authorised by the issue and the proof. There are three counts in the declaration. The first and third counts allege a promise by the testator, and the second count alleges a promise by the executors. The plea denies the promise by the testator. The objection to the verdict on this ground refers to and is founded on the other objection to the sufficiency of the notice to charge the testator. But as was before decided by this court, we think the notice good, and if so, the liability of the executors arises by operation of law. The second count was therefore sustained by the proof upon the record, and we do not feel authorised to disturb the verdict on account of any technical defect in the plea. The statute of Jeofails cures the objection.

Judgment affirmed.