## WILLIAM SOHIER *vs.* BENJAMIN LORING & others.

A composition deed, whereby the holder of a bill of exchange gives time to the acceptor, and agrees to discharge him on receiving a portion of the debt, reserving the holder's remedies against other parties to the bill, does not discharge the drawer and indorsers.

The holder of a bill of exchange, no part of which has been paid, may prove it in full in insolvency against the estate of each party thereto, and receive a dividend

from each upon his whole claim, provided he does not receive in all more than the whole amount of the bill; but any proof, sought to be made after he has been paid any part of his claim, can be only for the unpaid balance.

The holders of certain bills of exchange, drawn or indorsed by G., and accepted by M., proved them in insolvency against the estate of G., and made a composition with M., whereby M. conveyed certain property in trust to pay one fifth of the bills, which conveyance the holders accepted, reserving their remedies against the other parties. It was held, that those bill-holders, who applied to prove their claims against the estate of G. before entering into the composition with M., were entitled to prove the full amount of their bills; but that those who applied to prove their claims against the estate of G., after joining in the composition with M., could prove only the amount due them after deducting the one fifth secured by the composition.

THIS was an appeal from a decision of Ellis Gray Loring, Esquire, a master in chancery for this county, overruling the motion of the appellant, as assignee of Edward H. Green and company, insolvent debtors, to expunge or reduce the amount of certain claims, proved before the master against the estate of Green and company. The case was submitted to the court upon the following agreed statement of facts : — On the 23d of February, 1846, a warrant was issued by the said master, against the estate of Edward H. Green and John E. Short, both of Boston, merchants and partners, doing business under the firm of Edward H. Green and company. The first publication of the notice required by the warrant was made on the 24th of February, 1846, and, on the 11th of March following, the appellant was chosen assignee, and duly received an assignment of all the insolvent's estate.

Previous to their insolvency, Green and company, as copartners, were employed by Oliver P. Mills, of New York, to make and negotiate certain bills of exchange, drawn on the firm of Major and Wallace, of London ; and from time to time, as opportunity offered, Green and company had drawn on account of Mills various bills of exchange, against consignments of goods in the hands of Major and Wallace belonging to Mills, which bills were sold in the usual course of business to the appellees. Green and company, for a commission paid to them by Mills, had become responsible as the drawers or indorsers of these bills, which were duly accepted by Major and Wallace, but were not paid at maturity. Notice of their dis-

honor was duly sent to the drawers, and the bills were taken up by the appellees, and proved by them against the estate of Green and company.

The appellees, whose claims were thus proved, were Hawes, Gray, and company, proved on the 10th of March, 1846; Benjamin Loring and Levi H. Marsh, executors of Elijah Loring, proved on the 20th of March; Thomas Tarbell and company, proved on the 29th of April, 1846; and Samuel May and company, proved on the 18th of January, 1847; the whole amounting to about $26,000.

The bills proved by Hawes, Gray, and company were drawn by Mills payable to his own order, and indorsed by him to the order of Green and company, and by them indorsed. The bills proved by the other appellees were drawn by Green and company on account of Mills. All the bills were directed to Major and Wallace, and were by them accepted. The several appellees sent their bills to England in payment of debts or to make purchases there during the months of November and December, 1845; and the bills were at maturity returned to them dishonored, by due course of mail.

At a meeting of the parties holding bills drawn by or by the order of Oliver P. Mills held in London, on the 5th of June, 1846, a proposition for compromising their claims against Major and Wallace on these bills was agreed to; and, on the 23d of December following, an indenture for that purpose was drawn up and executed at London by Major and Wallace, by these bill holders, including the appellees, by their respective agents, and by certain trustees appointed under the composition deed. This composition deed recited that Major and Wallace, being unable to pay in full all their debts, had proposed to pay their creditors, including the parties holding bills drawn by or by the order of Oliver P. Mills and accepted by Major and Wallace, a composition of five shillings in the pound, on the amount of their debts, by three equal instalments, payable at three, six, and nine months from the date of the deed, and to be secured by promissory notes of James Wallace, payable at those periods respectively, in full satisfaction and discharge of such debts; and that their creditors, including said bill-holders,

had consented to and agreed to accept such composition; and that the bill-holders had received in addition to this composition four shillings in the pound in money. Major and Wallace by this deed assigned certain goods to certain trustees therein named, in trust to sell and convert the same into money, and divide the proceeds among the bill-holders, parties to the composition deed; and the bill-holders covenanted not to sue Major and Wallace on said bills of exchange, unless on default of payment of the notes of James Wallace; and that upon payment of those notes to the trustees, the bill-holders would release Major and Wallace from the said bills of exchange. Then followed this clause:—"Provided always, and it is hereby expressly agreed and declared, that it shall be lawful for the said bill-holders, parties hereto of the second part, to execute these presents without prejudice to their rights and remedies upon the said bills, mentioned in the second schedule hereunder written, respectively, or upon collateral or other securities for the same, respectively, against any person or persons whomsoever other than the said McKedy Major and James Wallace, or either of them, their or either of their heirs, executors, and administrators; and that notwithstanding these presents, or any thing herein contained, they, the said bill-holders respectively, and their respective executors, administrators, and assigns, shall be at liberty to enforce and adopt all or any of such rights or remedies, against any such other person or persons, in the same manner as if these presents had not been executed." And the bill-holders covenanted to indemnify the trustees, from all claims for or on account of the goods assigned to them in trust, or the payment of any dividend out of the proceeds thereof.

The dividends, which were made under this indenture, amounting to four shillings in the pound, have been received by the appellees respectively.

On the 4th of August, 1847, the appellant, as the assignee of Green and company, filed with the master in chancery a written motion, that the claims of the several appellees should be expunged from the list of debts proved against Green and company; or, if not expunged, that they should be reduced in

amount, by deducting therefrom the payments received by the appellees, respectively, under the provisions of the composition deed; but the master, after due hearing, overruled the motion, and the assignee appealed to this court.

It was agreed, that if the court should sustain the master's decision, judgment should be entered for the appellees, but if the court should reverse the decision of the master, the case might be sent to a jury, to be tried on such issue or issues, as the court should direct, or otherwise disposed of as they should determine.

"The case was argued in writing.

*W. Sohier,* for himself.

1. Unless the holder's rights against other parties are saved by the reservation, the provision of the composition deed, giving time to .the acceptors, discharges the drawers and indorsers. *United States Bank* v. *Hatch,* 6 Peters, 250. That the agreement is in the form of a covenant not to sue, is immaterial. *Gifford* v. *Allen,* 3 Met. 255.

The provision reserving the holders' rights against other parties is of no effect, as being against public policy. *Ex parte Smith,* 3 Bro. C. C. 1. And as affecting the legal rights of the surety without his consent; and it matters not that the composition is for the actual advantage of the surety. *Ex parte Wilson,* 11 Ves. 410. Where the holders reserved a nominal sum, for the purpose of preserving their rights against the other parties, the latter were held discharged. *English* v. *Darley,* 2 B. & P. 61. The cases, in which indorsers have been held not to be discharged, have generally arisen under composition deeds executed by the acceptor with his creditors, including the indorsers, and containing a provision for recourse to the indorsers. *Bruen* v. *Marquand,* 17 Johns. 58; *Gloucester Bank* v. *Worcester,* 10 Pick. 528; *Parsons* v. *Gloucester Bank,* 10 Pick. 533; *Burrill* v. *Smith,* 7 Pick. 291. It is true, that there are three or four *dicta* of lord Eldon's, that a reservation like the one in this deed is good. *Ex parte Gifford,* 6 Ves. 805; *Boultbee* v. *Stubbs,* 18 Ves. 20; *Ex parte Glendinning,* Buck, 517; *Ex parte Carstairs,* Buck, 560. The last case decided only, that as the indenture in that case professed to provide for the

debts of Easterby Hall and company, and for the debts of Ellill only so far as he was a surety for E. H. & Co., and not for all debts which Ellill might happen to owe to creditors executing the indenture; therefore, parties signing the deed, as creditors of E. H. & Co., had not thereby released their right to prove against the estates of the acceptors of certain bills, indorsed to them by Ellill as security for his own debts. And the expression of lord Eldon, (p. 592,) "that, by a deed of composition, where you wish to release certain individuals but to retain the liability of other individuals, you may retain that liability, if those with whom you contracted are willing to enter into that sort of composition," may well be construed to include, in "those with whom you contracted," the parties to be held, as well as those to be released. We may fairly set off against this remark of lord Eldon the remark of lord Denman, in *Nicholson* v. *Revili,* 4 Ad. & El. 675, 683; *S. C.* 6 Nev. & M. 142, 200. He says, "Some of the expressions employed" by lord Eldon, in *Ex parte Gifford,* "would seem to lay it down, that a joint creditor might release one of his debtors, and yet, by using some language of reservation in the agreement between himself and such debtor, keep his remedy entire against the others, even without consulting them. If lord Eldon used any language which could be so interpreted, we must conclude, that he either did not guard himself so cautiously as he intended, or that he did not lend that degree of attention to the legal doctrines connected with the case before him, which he was accustomed to afford." The New York cases are only to the extent, that the indorser is not discharged by a discharge of the maker, when the holder in making the discharge expressly reserves all his rights against the indorser, and all the indorser's rights against the maker. Bayley on Bills, (2d Amer. ed.) 361; *Stewart* v. *Eden,* 2 Caines, 121; *Bailey* v. *Baldwin,* 7 Wend. 289. Here there is no reservation, express or implied, of the drawer's or indorser's rights against the acceptors; the whole object and scope of the composition deed is a discharge of Major and Wallace absolutely, on the creditors receiving five shillings in the pound; not a word is said about their remaining liable to any person

or under any circumstances, except the non-payment of the five shillings. On the contrary, all the implications are against it; time is absolutely given to the acceptors, without any stipulation that the drawers or indorsers may sue within that time; a full discharge is to be given without reservation; and the bill-holders are to indemnify the trustees against all claims on the fund, with no provision that the drawers and indorsers may come in and share that fund. The reservation in the deed only shows, that Major and Wallace were willing that their creditors, on discharging them absolutely, should retain their rights against other parties if they could.

2. If the appellees can prove any thing against the estate of Green and company, they can, at most, prove only for the amount of the bills, after deducting the four shillings in a pound received by them in money, and also the amount secured by the composition deed. Henley, B. L. (3d ed.) 155; Cooke, B. L. 173; *Ex parte Wyldman,* 2 Ves. Sen. 113. This principle must at least apply to the bills of Samuel May and company, which were not proved until after they had joined in the composition deed.

This is the principle in bankruptcy according to the English authorities. But as the object of our insolvent laws, which differ in many of their provisions from the English bankrupt laws, is, to make a *pro ratâ* distribution of the property of insolvents, without priority or preference, all payments made by any party liable on the bills, though made since the proof of the bills against Green and company's estate, should be deducted, before making a dividend.

*J. G. King,* for the appellees.

1. The rule that a creditor, by discharging the principal, discharges the surety, is subject to the following exceptions, which show that courts are disposed to construe strictly any claim of a surety to be released from his suretyship, by the technical rule set up by the appellant. (1.) Where the surety gives an express or implied assent, as in *Bruen* v. *Marquand,* 17 Johns. 58, and other cases cited for the plaintiff. This point is not involved in this case. (2.) Where the creditor, as in this case, expressly reserves his rights against the surety. *Boulthee*

v. *Stubbs,* 18 Ves. 20; *Ex parte Glendinning,* Buck, 517; *Nichols* v. *Norris,* 3 B. & Ad. 41; Bayley on Bills, (2d Amer. ed.) 362, 364; Burge on Suretyship, 205; Pitman on Prin. & Surety, 181; *Burrill* v. *Smith,* 7 Pick. 291. The reservation of the indorser's rights against the maker follows as a necessary consequence from the reservation of the holder's rights against the indorser. The *dictum* of lord Denman in *Nicholson* v. *Revill,* was made with regard to some remarks of lord Eldon in *Ex parte Gifford,* a case which has been repeatedly doubted, and the doctrine of which goes far beyond any thing claimed by the appellees in this case. (3.) Where the contract to give time is invalid in law or for an insufficient consideration. *Philpot* v. *Briant,* 4 Bing. 717; *Arundel Bank* v. *Goble,* Chit. on Bills, (10th Amer. ed.) 413; *Clarke* v. *Wilson,* 3 M. & W. 208; *United States Bank* v. *Hatch,* 6 Peters, 250; *McLemore* v. *Powell,* 12 Wheat. 554. (4.) Where the agreement to discharge is conditional, depending on the doing of some act by the principal, which he does not perform. *Vernon* v. *Turley,* 1 M. & W. 316; *Badnall* v. *Samuel,* 3 Price, 521. In this case, the discharge of Major and Wallace is made to depend on two conditions; first, the payment of nine shillings in the pound, which has not been done; and, second, provided a release can be given and retain the bill-holder's rights against the other parties.

2. If the estate of Green and company is not discharged, then the proofs of debt must stand for their full amount, as appears from the cases cited by the appellant. The only restriction put upon parties claiming against different insolvent estates is, that no man shall recover more than his whole claim. The claim to be proved is the actual claim existing at the time of proof; and nothing but actual payment before proof will reduce it.

*J. P. Healey,* in reply. The provision in the indenture, that other parties shall not be discharged, is not a condition, but a mere declaration of the intention of the parties, which the law will not allow them to carry into effect. The contract to give time in this case was a valid contract, on a legal consideration, the consideration being the giving of fresh security. The ques

tion, whether the drawers and indorsers are discharged by the composition, does not depend on the inquiry whether the acceptors have fulfilled the conditions imposed on them, so as to entitle them to a discharge, but on the fact whether time was actually given to them, in which to perform those conditions.

If the claims of the appellees are to stand against the estate of Green and company, the claim of Samuel May and company must be reduced by the amount received by them under the composition deed; for by joining in the deed, and thus accepting the conveyance by Major and Wallace of their property in trust, they in fact received payment. The fact, that the amount to be received by them was not determined until afterwards, cannot affect this question. The title to the assigned property passed at that time substantially from Major and Wallace to the appellees, and reduced their debts to the extent of the value of that property. If this were not so, the case of Samuel May and company would come directly within the provision of the insolvent law, requiring a creditor, holding collateral security, to have the value of that security ascertained, and the proceeds applied to the reduction of his debt, before he can be allowed to prove it. *St.* 1838, *c.* 163, § 3.

The opinion was delivered at the March term, 1851.

METCALF, J. The composition made with the acceptors would have discharged the drawers and indorsers, if there had not been inserted in the composition deed a proviso that it should not prejudice the holders' remedies against any other parties besides the acceptors. Bayley on Bills, (2d Amer. ed.) 357, 358. The first question in the case therefore is, what is the legal effect of that proviso?

It is settled, in England, that a discharge or giving time, by a creditor to his principal debtor, will not discharge the surety, if there be an agreement between the creditor and the principal debtor that the surety shall not be discharged. And this rule of law is applicable to parties to bills of exchange and promissory notes, who are liable only on the failure of prior parties, though they are not technically sureties of those parties. 1 Steph. N. P. 936; Montagu on Composition, 36; Burge on

46 *

Suretyship, 210; Chit. on Bills, (10th Amer. ed.) 420; Byles on Bills, (2d Amer. ed.) 202. See also *Mallet* v. *Thompson*, 5 Esp. R. 178. The same doctrine was advanced by Messrs. Hamilton and Riker, in argument, and was recognized by the supreme court of New York, in *Stewart* v. *Eden*, 2 Caines, 121, very soon after it had been laid down by lord Eldon, in *Ex parte Gifford*, 6 Ves. 805. In this last case, lord Eldon said sureties would not be discharged by a discharge of the principal, if there was " a reserve of the remedy " against the surety, and that lord Thurlow had so admitted in a previous case not reported. He afterwards laid down this principle more authoritatively in *Boultbee* v. *Stubbs*, 18 Ves. 20, and *Ex parte Carstairs*, 1 Buck, 560. In *Ex parte Glendinning*, 1 Buck, 517, he said, " If a man by deed agree to give his principal debtor time, and in the deed expressly stipulate for the reservation of all his remedies against other persons, they shall still remain liable, notwithstanding the arrangement between their principal and the creditor."

In *Nichols* v. *Norris*, 3 Barn. & Adolph. 41, the court of king's bench decided that a composition like that in the present case, made with the indorser of a note given for his accommodation, did not discharge the maker. It was said by the court, that such composition deeds were very common, and that the special proviso took the case out of the common rule as to the discharge of sureties by giving time to the principal.

In 1846, the case of *Kearsley* v. *Cole*, 16 Mees. & Welsb. 128, came before the court of exchequer. That was an action for money paid for the defendant, for whom the plaintiff had been surety. The defence was, that the defendant had made an assignment to his creditors, who had covenanted not to sue him. But it appeared that there was a proviso, in the deed of assignment, that any creditor might execute it without prejudice to any specific lien or security, or to any claim against any surety, and that this proviso was inserted with the knowledge and consent of the plaintiff. He was afterwards called on as surety of the defendant, and paid the claim. The question was, whether this payment was to the use of the defend-

ant, or was a voluntary payment, which gave him no right to :eimbursement. The court held that the plaintiff was entitled to recover; he not having been discharged from his suretyship oy the deed of assignment. The opinion of the court was given by Mr. Baron Parke, who fully and clearly stated the decisions, and the principles upon which they were made, as follows: " The question is, what is the effect of a discharge with reserve of remedies consented to by the surety? We do .1ot mean to intimate any doubt as to the effect of a reserve of remedies without such consent; and the cases are numerous that it prevents the discharge of a surety, which would otherwise be the result of a composition with, or giving time to, a debtor, by a binding instrument; and the reserve of remedies has that effect upon this principle — first, that it rebuts the implication that the surety was meant to be discharged, which is one of the reasons why the surety is ordinarily exonerated by such a transaction; and, secondly, that it prevents the rights of the surety against the debtor being impaired — the injury to such rights being the other reason; for the debtor cannot complain if, the instant afterwards, the surety enforces those rights against him; and his consent that the creditor shall have recourse against the surety is, impliedly, a consent that the surety shall have recourse against him. This is the effect of what lord Eldon says in *Ex parte Gifford* and *Boultbee* v. *Stubbs*, as to the reserve of remedies; and the general proposition, that, with that recourse, the composition or giving time does not discharge the surety, is supported by those and the following cases: *Ex parte Glendinning; Nichols* v. *Norris; Smith* v. *Winter*, 4 Mees. & Welsb. 454, and others. This point must, therefore, be considered as settled. Some remarks have, indeed, been made by lord Denman, in the case of *Nicholson* v. *Revill*, 4 Adolph. & Ellis, 675, on the doctrine of lord Eldon in *Ex parte Gifford*, throwing doubt on its correctness, on the supposition that lord Eldon had held that a creditor could *release* one joint and several debtor, and hold another liable by a reserve of remedies; which would certainly be against the decision in *Cheetham* v. *Ward*, 1 Bos. & Pul. 630, unless the instrument of release could, by reason of

the context, be construed to be a covenant not to sue, as it was in the case of *Solly* v. *Forbes*, 2 Brod. & Bing 38. But we consider it clear that lord Eldon meant only to apply the doctrine to cases where there was *no release*, but a composition, or giving time, not amounting to a *release*, which is the present case; and, with reference to it, the rule laid down by lord Eldon is not impeached by lord Denman's remarks." And the decision of the court was, that the surety's consent to the creditors' reserve of their remedy against him did not alter the law of the case in favor of the principal.

These doctrines were incidentally recognized by Mr. Justice Wilde in *American Bank* v. *Baker*, 4 Met. 175, and were adopted and applied by the court of appeals of Maryland, in *Clagett* v. *Salmon*, 5 Gill & Johns. 314.

It is very obvious, that a principal debtor may gain little or nothing by such a composition, as this, with his creditor; inasmuch as he is left liable to the like proceedings against him by his sureties, which his creditor might have instituted, if no composition had been made. But if he pleases to subject himself to that liability, by voluntarily executing an agreement which has that effect, there is no legal reason why he should not be held to that agreement.

On these grounds, we are of opinion that the holders of the bills, in the present case, were rightly permitted by the master to prove their claims thereon against the drawers and indorsers; the latter not having been discharged by the composition made by the former with the acceptors.

The second question respects the amount which the holders were entitled to prove against the drawers and indorsers. And we are of opinion that each was entitled to prove the full sum due and unpaid, at the time of making proof, on the bill or bills held by him. This question is not settled by any provision in our insolvent laws; and we therefore adopt the rule applied in bankruptcy. That rule is, that a holder may prove his claim, under commissions against the drawer, acceptor, and indorser, and receive a dividend from each upon his whole claim, provided he does not receive, in the whole, more than his full due. But there is a distinction in this case, when a

holder applies to prove his debt against one party, after having received a part of it from another, and when he applies to prove before receiving any payment or composition from another party, or before a dividend has been declared in his favor, under a commission against another party. Any sum actually received in payment, from any party to a bill, before proof made against another, must be deducted from the amount to be proved against any other party. So, as a general rule, must the amount of a dividend, declared on the estate of another party, be deducted. *Cooper* v. *Pepys*, and *Ex parte Wildman*, 1 Atk. 107, 109; see 5 Ves. (Perkins's ed.) 449, *note;* Eden's Bankr. Law, (2d ed.) 155; 1 Mont. & Ayrt. Pract. in Bankruptcy, 202, 203.

In the present case, we regard the composition made with the acceptors, on the 23d of December, 1846, as payment of one fifth of the amount of the bills. The acceptors then conveyed property in trust to pay one fifth, and the holders accepted that conveyance. But all the holders, except May and company, made proof of their claims against the estate of Green and Short, drawers or indorsers, before they made the composition with the acceptors, and were therefore entitled, according to the rule just stated, to prove the full amount then due on their bills. May and company having made proof after they had executed the composition deed, by which they, in legal effect, had received part payment from the acceptors, were entitled to prove only the amount due after deducting that payment.

· The proceedings· of the master, from which this appeal was taken, are affirmed in all things, except as to the amount proved by May and company, which is to be reduced by deducting the sum received by them under the composition with the acceptors.