(7 App. Div. 409)

DEININGER et al. v. MILLER et al.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

NEGOTIABLE INSTRUMENTS—NOTICE OF NONPAYMENT—DEATH OF INDORSER.
   Where the indorser of a promissory note dies before maturity, a notice of nonpayment given 10 days after maturity to the indorser's executor is not sufficient to charge her estate.

Appeal from judgment on report of referee.

Action by William Deininger and others against Christian J. Miller and Charles Roe, executors, etc., of Charlotte Miller, deceased,

on a promissory note. Judgment was rendered in favor of plaintiffs for $358.63 damages and costs, and defendants appeal. Reversed.

The defendants' testatrix, Charlotte Miller, indorsed the note in suit, made by one Amelia Witzleben, and the same was subsequently indorsed by Christian J. Miller, the husband of the first indorser; both of such indorsements being for the accommodation of the maker. The note was thereafter delivered to the plaintiffs, who also indorsed it, and procured it to be discounted by the German-American Bank of Rochester. Charlotte Miller died September 11, 1894, leaving a last will and testament, which was duly admitted to probate upon the 22d day of October, following, and letters testamentary were upon the same day issued to the defendants by the surrogate of Monroe county. The note fell due September 24, 1894, and the day previous one of the plaintiffs called at the bank where the note was held, and gave directions not to protest the same, giving as a reason therefor that the indorser relied upon was dead, and also directed the bank, in case the note was not paid at maturity, to charge it to the plaintiffs' account. In obedience to such instructions, the note was not protested at its maturity, but was charged up to the plaintiffs' account, and thereafter, and about October 4th, the plaintiffs sent a party to see Christian J. Miller, who was then informed that the note was due, that it was the note that his wife had indorsed for Witzleben, and that the holders looked to him for its payment; and he replied that the matter was in the lawyer's hands,—referring to his co-executor, Mr. Roe. Shortly thereafter, and about the middle of October, the plaintiffs' attorney met the defendant Roe, and gave him verbal notice of the nonpayment of the note, and that the plaintiffs would look to the estate of Mrs. Miller for its payment, whereupon Roe directed him to draw up an affidavit of the claim, and present it. Subsequently, and upon the 7th of November, following, the claim was presented in due form, and it was at once rejected by the defendants, and a reference, under the statute, agreed upon. The referee thereafter reported in favor of the plaintiffs for the full amount of the note, with costs.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles Roe, for appellants.
H. Perry Blodgett, for respondents.

ADAMS, J. The only question in this case is whether or not, upon the facts above stated, it can be said that sufficient notice was given of the demand and nonpayment of the note in suit to charge the estate of the deceased indorser. The learned referee, in reaching a conclusion favorable to the plaintiffs' contention, obviously bases his decision upon the assumption that the personal representatives of the deceased testatrix were notified, within a reasonable time after its maturity, of the nonpayment of the note by its maker, and that a notice of that character was all that could be required. While not intending to be understood as laying down any arbitrary rule to govern in all cases where an indorser dies prior to the maturity of a note, we are constrained to differ from the learned referee, and to hold that in the circumstances of this case, at least, the estate of Mrs. Miller is not charged with the payment of the note in question. Prior to the statute of 1857, it was the universal rule, under the law merchant, to give notice of dishonor, in case of a deceased indorser, either to his personal representative, or to some agent or person interested in his estate, or by a written notice addressed to the indorser, and left at his last place of residence. Bigelow, Bills & N.

(last Ed.) p. 122.    But, whatever the form of notice, the holder was required to use the same degree of diligence in giving it as if the indorser were living.    The rule is thus stated by an elementary writer whose authority to speak upon the subject is recognized by every one:

"Where the indorser is dead, notice must be sent to his executor or administrator, and if no person has been appointed, or it cannot be ascertained by the use of due diligence who or where he or they who have been appointed can be found, notice must be forwarded to the last place of residence of the deceased.    Hence the death of the indorser is no excuse for neglect to give notice."    Pars. Bills & N. p. 526.

The first inquiry, therefore, which suggests itself, is, what diligence is necessary in order to charge a living indorser?    Formerly it was held that any notice which was "reasonable" in point of time was sufficient, but this expression was found by experience to be too general to convey a correct idea of the requirements of the law, and later on the period allowed the holder became fixed, and was confined to the expiration of the day following the dishonor of the note.    Daniel, Neg. Inst. §§ 1035, 1038.    And such is the rule which still obtains.    Whiting v. Bank, 77 N. Y. 363.    In course of time, however, and in the year 1857, the legislature of this state prescribed an exact form for notifying an indorser of the nonpayment of a note, which has ever since been adopted and followed in the commercial circles of this state, and which is expressed in the following language, viz.:

"Whenever the residence or place of business of the endorser of a promissory note, or of the drawer or endorser of a check, draft or bill of exchange, shall be in the city or town, or whenever the city or town indicated under the endorsement or signature of such endorser or drawer, as his or her place of residence, or whenever in the absence of such indication, the city or town where such endorser or drawer, from the best information obtained by diligent inquiry, is reputed to reside or have a place of business, shall be the same city or town where such promissory note, check, draft or bill of exchange is payable or legally presented for payment, or acceptance, all notices of non-payment and of non-acceptance of such promissory note, check, draft or bill of exchange may be served by depositing them, with the postage thereon prepaid, in the post-office of the city or town where such promissory note, check, draft or bill of exchange was payable or legally presented for payment or acceptance, directed to the endorser or drawer, at such city or town."    Laws 1857, c. 416, § 3.

By this provision of the statute, it would unquestionably have been competent for the plaintiffs to have served notice of the demand and nonpayment of the note in suit upon the representatives of the deceased indorser by inclosing the same in an envelope directed to the indorser herself, at her last place of residence, which it is conceded was in the city of Rochester, and depositing the same in the post office; and, although she had previously died, such a notice would have operated to charge her estate (Bank v. Birch, 17 Johns. 25); for it not only would have been one which complied literally with the requirements of the statute, but it would have been the one most likely to have conveyed the requisite information to the persons directly interested in obtaining the same (Stewart v. Eden, 2 Caines, 121, 127).    The plaintiffs, however, did not avail themselves of this statute.    Indeed, they appear to have assumed that the death of

Mrs. Miller released every one who was liable upon the note, except the maker; for upon the day preceding its maturity, as we have seen, one of them went to the bank, and gave express directions that the note should not be protested,—thereby releasing, beyond all question, the second indorser. It was not until some 10 or 11 days thereafter that any attempt whatever was made to notify any one representing the deceased indorser of its nonpayment, and then only in a very informal and casual manner; and, when notified by Christian J. Miller that the matter was left with his associate, the plaintiffs waited about 10 days longer before giving any notice to Mr. Roe, and more than 6 weeks were permitted to elapse before proof of plaintiffs' claim was finally filed. Had no directions to the contrary been given the bank, it is entirely safe to assume that the note would have been protested and notice thereof given in the ordinary manner, and in a manner which would have been effectual to preserve the rights of all parties.

As before stated, it is foreign to the purpose of this court to establish, as a rule applicable to all cases, that the statute of 1857 furnishes the only method by which due notice of the dishonor of a note can be given where the indorser has departed this life intermediate its inception and maturity. We simply mean to say that it provides a course which can be followed with entire safety in such cases, and that any other course which involves unnecessary delay cannot be regarded as sufficient without doing violence to the plain intent and meaning of the statute, and to well-settled principles of commercial law. In other words, we think the statute furnishes a simple method by which the required notice can be given, and that it ought to be adopted save in exceptional circumstances.

The judgment appealed from should be reversed, and a new trial granted, with costs to abide the event.

FOLLETT, GREEN, and WARD, JJ., concur.

HARDIN, P. J. (concurring). In Stewart v. Eden, 2 Caines, 121, the note was due on the 8th of November, 1798. "A notice in the usual form was carried to the dwelling house of Medcalf Eden, the indorser, which was found fastened up; and on this the bearer of the notice rolled it up, and put it into the keyhole of the outer door." Eden, shortly after the note was made, retired to his country seat, where he died on the 13th of September, 1798. In the course of the opinion it was said:

"Nor was it fatal to direct the notice to the indorser himself, for it was not known whether he had made a will, nor who his executors were, until long after. It was full as probable that it would reach the parties interested by this address as by any other. Some one of the deceased's family would either open it, or see it safely delivered to an executor. The notice, therefore, was well served, and its address proper."

That case was referred to with approval in Bank v. Birch, 17 Johns. 24, and in the course of the opinion approving of the case it was said, viz.:

"If an indorser be dead at the maturity of a note, and there be executors or administrators, at that time, known to the holder, notice must be given to

them; for they represent the testator or intestate, and are as fully entitled to notice as he would be, if alive. But it is a novel principle, unsupported either by precedent or authority, that notice is to be given to the representatives of the indorser, and who become such long after the note had fallen due. The rights of a holder of a note or bill are to be determined by his acts, when the note or bill becomes due; and if he then gives such notice as, under the existing state of facts, the law requires of him, his rights are fixed, and he cannot be required to superadd any other notice at a future period."

In the case cited no notice had been given to the executors, and we perceive that a notice delivered at the dwelling house of a deceased indorser was pronounced to be well delivered.

In Whiting v. Bank, 77 N. Y. 363, it is assumed that it is the duty of a holder of a note, who would charge an indorser for its nonpayment, to give notice "on the next business day after the note became due." In Willis v. Green, 5 Hill, 232, the plaintiff failed to show that the estate of Johnson had been charged by notice of nonpayment. The note had been indorsed by two persons. It was protested for nonpayment on the 4th of January, 1828, and on that day notice of nonpayment was sent by mail to each of the indorsers, directed to Little Falls. When the note was made, Johnson resided in the town of Salisbury, where he remained until his death, which took place on the 27th of December, 1827,—a few days before the note fell due. Johnson died intestate and insolvent, and no letters of administration were granted until after the note fell due. In that case, Nelson, C. J., said:

"But the plaintiff failed to show that the estate of Johnson had been charged by notice of nonpayment. If the notice relied on for that purpose had been sent to the proper place, no doubt, it would have been sufficient, under the circumstances of this case, though directed to Johnson after his death. Stewart v. Eden, 2 Caines, 121; Bank v. Birch, 17 Johns. 25. But the notice was sent to Little Falls, instead of Salisbury, where Johnson resided; and, if there was nothing else in the case, I think the failure to charge the estate by due notice would operate a discharge of both indorsers."

That case was decided in 1843.

In Bank v. Bennett, 5 Hill, 236, it was held, where a notice of nonpayment had been sent by mail, directed to the deceased indorser, instead of his personal representatives, in a case where the holder of a note was appraised before it fell due that the indorser was dead, that, "had the notice reached the personal representatives of the indorser within the time which would have ordinarily elapsed if directed to them," it would have been sufficient. In that case the notice was addressed to the testator, but did not come to the knowledge of any one of the executors in due time, and it was irregular, because the party resided in Auburn, and the notice was put in the post office in Auburn, addressed to the party, "instead of sending the notice to his dwelling house or place of business." That case was decided prior to the statute authorizing the mailing of notices to parties residing in the same town where the note is made payable. In Sheldon v. Benham, 4 Hill, 129, decided in 1843, it was held that service of notice of protest cannot be made through the mail, where the party giving it, and the one to whom it is sent, reside in the same village. It is said in 3 Rand. Com. Paper, § 1244, viz.:

"Where the party to be notified has died before the paper matures, the notice should be given to his personal representatives, if any is appointed.

\* \* \* And a notice so addressed, and sent by mail to the proper post office, is sufficient to bind the estate, where the notary knew of the indorser's death, but did not know whether an executor or administrator had been appointed. But if the names of the executors are known, or can be known by reasonable diligence, it will not be sufficient to give notice 'to the executors' of the indorser.".

And the same author, in section 1245, says:

"Before an executor has been appointed, a notice mailed to the indorser's 'legal representative' has been held to be sufficient."

And in support of that proposition he cites Boyd v. Bank, 15 Grat. 501. And again he says:

"Where the drawer or indorser dies before the paper matures, it has been held that, before the appointment of an administrator, notice may be left at his residence in town (which was closed), and put into the keyhole there, although he had gone to his country house for the summer, and had died there."

And in support of that proposition the author quotes Stewart v. Eden, 2 Caines, 121. The same author says further:

"So if he died before the maturity of the paper, and that fact is unknown to the holder, and no personal representative has been appointed, it will be sufficient if the notice is left at his last residence, and mailed to his family, who had removed into the country."

For that proposition he seems to rely on the case of Bank v. Birch, supra.

Prof. Parsons, in his book of Law of Business Persons, states, at page 182, that the holder should use due diligence in presenting a bill to a drawee, and adds:

"And, if he be dead, the holder should ascertain who is his personal representative, if he has one, and present the bill to him."

Again, the same author, in speaking of a notice to an indorser, at page 189, says:

"If the party to be notified is dead, notice should be given to his personal representatives. A notice addressed to the 'legal representatives' of, etc., and sent to the town in which the deceased party resided at his death, has been held sufficient."

The quotations are made from a revised edition of 1894.

In the case of Bank v. Darling, 91 Hun, 236, 36 N. Y. Supp. 153, an action was brought upon a promissory note made by Gould, indorsed by Jeremiah Darling, which became due on the 5th day of February, 1894, and was on that day protested against the maker. Darling died on the 18th day of January, 1894, and letters testamentary were issued to his executors on the 12th day of February, 1894. In that case it appeared that at the time of the protest two notices were sent by the notary who protested the note—

"One addressed to 'K. Darling,' and the other to 'The Estate of J. Darling,' both being enclosed in an envelope, and directed to the 'Estate of J. Darling, Stony Brook, L. I.,' which was the place of his residence at the time of his death, but these notices were not received by the defendants."

The learned judge, after quoting Willis v. Green, Stewart v. Eden, and Bank v. Birch, supra, says:

"True, it was directed to his estate, but no other direction would be more likely to bring it to his family. \* \* \* Upon reason and authority, the notice must be deemed sufficient."

The foregoing authorities, as well as the reasons stated in the opinion of ADAMS, J., lead me to concur in his opinion favoring a reversal.