## John Huff *v.* Richard Ashcraft.

In the event of the death of the maker of a promissory note, the rule of diligence does not make it necessary to make demand of payment at the dwelling of the deceased on the day of his funeral.

SPECIAL TERM.—The facts of presentment, demand, etc., are stated in the decision.

*French & Kirby,* for plaintiff.

*Dodd & Huston,* for defendant.

STORER, J. The only real question in controversy, is the sufficiency of the presentment of the note for payment, and

this involves the other question, whether the facts stated b the notary are equivalent to such presentment. The notary states, that on the day the note became due, he inquired for the maker, and was informed that he was dead, and was to be buried on that day, and finding no one to attend to the note, notified the indorser the same day.

It is contended by the defendant's counsel, that the notary should have called at the defendant's dwelling-house and left a notice with his family, on the day he referred to, though he admits that no administration had been granted on the estate.

It is well settled, that if the maker of a note, or the acceptor of a bill, is dead, when the note or bill becomes due, that the personal representative of the deceased, his executor, or administrator, must be notified, either personally or by letter, and payment demanded; the rule may have its exceptions, but it is now the rule established. So well is it understood, in practice, that no English authorities, we are told, can be found, in which the question has been mooted. Chitty on Bills, 11 Amer. Ed. 497 and note.

See also, Story on Promissory Notes, §241, who quotes Chitty to sustain the text; also, Story on Bills, §352, who refers to Chitty also; also to Bayley on Bills, ch. 7, §2, p. 200; Molloy B. 2, ch. 10, §34; the last writer lays down the rule thus: "If a bill be accepted and the party dies, yet there must be a demand made of his executors, or administrators, and a protest must be made." The same proposition is laid down by Byles, in his work on Bills, 142, who quotes Chitty to support the rule. Judge Story, in both his treatises, refers to 3 Peters, 87, *Magruder* v. *Union Bank of Georgetown;* and 16 S. & R. 157, *Juniata Bank* v. *Hale;* neither of these cases support the proposition, and we are left at last to the rule as stated in Molloy, which seems to be the basis of all subsequent practice by the commercial world. The Supreme Court of New York, in 17 Johns. 26, *Merchants' Bank* v. *Birch,* held the law to be thus settled, but quote no authority; so also in 2 Humphrey, 114, *Planters'*

*Bank* v. *White,* the Supreme Court of Tennessee adopt the rule, and refer to Chitty to authorize their decision. See 12 Mass. 86; 1 Nott & McC. 439.

Thus far the law is admitted. In the present case, there was no legal representative of the deceased, neither executor or administrator, and the indorser was properly notified that the debt was unpaid at maturity. But we are asked to require, of the plaintiff, the proof that a demand was made at the dwelling-house of the maker, as there were then no proper legal representatives.

We suppose the object of the demand is, to require payment of the note, by the party liable to pay, and if he is dead, then by those upon whom the settlement of his estate is cast; and as they alone have the responsibility, they are alone properly chargeable with the evidence upon which the estate of the decedent is to be held liable. Now it is well settled that neither the death, insolvency, absence, nor bankruptcy of the maker or indorser, will excuse demand and notice, and the reason given by the elementary writers is, that if the demand was made, however apparently hopeless the effort might appear, perchance some person might pay the demand for the honor of the party liable, and the distant probability of such a fact is matter of defense. The proposition does not determine the mode in which notice shall be given, or demand made, but discloses only the ground upon which really depends the right of the indorser to require the proper evidence to charge him.

If a notary, when called on to demand payment, ascertains that the maker or acceptor has absconded, left the country, or can not be found at his place of business, he may regard the proper presentment as made, and notify the indorser accordingly. The principle of the rule thus established is, that everything had been done that could be reasonably required, the law never compelling the performance of an act that would be barren of any result; a vain thing it never requires to be done. Let us apply the rule to the present case: the maker is dead, no legal representative is

appointed, the day of his burial is the day of presentment and demand—to say nothing of the peculiar situation of those, who, on so mournful an occasion, may well be supposed to be unfitted for the intrusion of creditors—we can not think that a visit by the notary to the widow, and perhaps minor children, would be productive of any imaginary benefit to the holder of the note, or the knowledge that such a call had been officially made, be of any value to the indorsers. Neither the widow nor the children have the power or are required to perform the duties of personal representatives. They can not be regarded as holding a special fund to discharge the liabilities of the husband and the father, and as they are generally ignorant of his business, they ought not to be asked to participate in its difficulties, or by their acts, to create or release a liability in which they have no original concern.

It is claimed that the law, however, as it is now understood, requires that the person demanding the note, under such circumstances as the present, should go to the house of the decedent and notify his family that the note is due. An examination of the very few authorities we can find, has resulted in the conviction, on our part, that the law has not yet been settled on the subject; that the question is fairly open, and we may well decide it on the application of first principles. The several editions of Bayley on Bills and Chitty on Bills, also published before 1826, contained no such statement of the law; in fact no English case can be found that has the least allusion to it. In that year an American edition of Bayley was published by Phillips & Co., who have added to the English text the statement upon which the defendant has predicated the duty of the notary in the present case; this addition to the original work is found at page 183. No reference is made to any other authority than 17 Johns. 25, *Merchants' Bank* v. *Birch*. Judge Spencer, in that case, held that notice should be given to the legal representatives, but does not intimate any opinion upon the additional duty that, it is now claimed, the holder of the note should have performed.

The opinion does nevertheless decide, that a notice inclosed in a letter, directed to a deceased party, and left at his house, would be sufficient, as perhaps some one of the family might open it and hand it to the legal representative; and this was the ruling in the previous case of 2 Caines, 121, *Stewart* v. *The Ex'r of Eden*. In the edition of Chitty, published in the United States, in 1834, the addition there made to Bayley on Bills, is introduced, as we believe, for the first time, indicated by a star, and credited to no preceding commentator. Judge Story, in his Treatise on Bills, §230, borrows the doctrine, and quotes Chitty to sustain him. In like manner, in his work on Promissory Notes, §253, the same rule is adopted, and the same reference is made on the margin. So in §241, where he refers to Chitty and Bayley, and his own work on Bills. He also quotes Malloy §34, 3 Peters, and 16 S. & R., which, it has already been remarked, contain no such ruling, either by direct decision, or even by allusion. In Byles on Bills, 159, it is stated, that "when the drawee is dead, and there are no legal representatives, the presentment should be made at the house," and his authority is Chitty alone.

We have two cases from the Supreme Court of Louisiana, in which the question has been discussed and decided. In 7 Louisiana, 495, *Toby* v. *Maurian*, Judge Martin held, that where the maker of the note died on the last day of grace, the notary, on calling at his domicil, being informed of the fact, protested the note for non-payment and notified the indorser, it was not such a demand as the law required; that there should have been a demand of the legal representative or the heir of the deceased. The judge refers to Chitty, Bayley, 3, and 7 Peters, the applicability of which we have already examined. In 10 Louis. 487, *Landry* v. *Stansbury*, Judge Martin ruled, that the note could not be demanded of the administrator or executor, because neither could pay the claim until the expiration of a year after the death of the intestate, "*Lex neminem cogit ad vanas.*" The demand should be made, says the judge, of the heir or the widow.

This case reiterates the rule already announced in 7 Louisiana, and we are at last referred to the interpolation of the American edition of Bayley. To this we trace the first introduction of the rule into any legal work, and from that introduction, unsustained by any adjudicated case, except those in Louisiana, we are asked to hold, that what would be very clearly a vain thing, should be done; that in a case where no rule of necessity requires the act to be done, and certainly every consideration of delicacy and humanity forbid it, a public notary must have called upon the widow or children, while performing the last offices of love and friendship for the dead, and perchance, in the midst of the funeral service, or at the grave, intrude himself, and thus add to misfortune already too great to be borne. Such an infliction we do not feel it our duty to aid in producing, in any case. It is not required, we believe, even by the letter of the law; it certainly is not by its spirit.

Judgment for plaintiff.