WESTON DODSON ET AL. v. MARY A. TAYLOR ET AL., HEIRS AND DEVISEES OF JAMES TAYLOR, DECEASED.

1. If it be faulty to declare against trustees under a will as devisees simply, the fault is formal and amendable.
2. If a primary debtor gives to his creditor additional security for the debt, trusting that thereby the creditor will be induced to refrain from pressing for immediate payment, and the creditor accepts such security, but does not agree, either expressly or by implication, to extend the time for payment, one who was surety for the original debt will not be thereby released.
3. If, at the maturity of commercial paper, the endorser is dead, and there are no personal representatives or none can be discovered by reasonable diligence, then notice of dishonor should be addressed to the endorser at his last place of abode. But when there are personal representatives, and they are known or discoverable by due diligence, then notice must be given to them or one of them.
4. Notice of dishonor, given in any of the modes above indicated, will bind the heirs and devisees of the endorser.
5. Notice of dishonor should describe the dishonored paper with such particularity as will apprise the person to whom it is given of the instrument in question.

On contract. On rule to show cause why a new trial should not be granted.

Argued at June Term, 1893, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and GARRISON.

For the plaintiffs, *John H. Backes* and *Edward H. Murphy.*

For the defendants, *William M. Lanning* and *Garret D. W. Vroom.*

The opinion of the court was delivered by

DIXON, J. This action was brought by Weston Dodson and others against the heirs and devisees of James Taylor, deceased, upon eight promissory notes made by Isaac Davis

and endorsed by said Taylor, dated respectively May 9th, 1887; May 20th, 1887; May 25th, 1887; June 8th, 1887; July 2d, 1887; July 19th, 1887; August 6th, 1887, and August 15th, 1887, each payable four months after its date, at the Mechanics' National Bank, in Trenton. James Taylor died August 17th, 1887.

At the trial in the Mercer Circuit, before Mr. Justice Scudder, without a jury, he found due to the plaintiffs on these notes the sum of $13,427.02, and ordered judgment in their favor for that amount. The defendants now have a rule that the plaintiffs show cause why the finding should not be set aside and a new trial granted.

The defendants' first contention is that the plaintiffs should have been nonsuited because Isaac Davis, George Price and James Severs are described in the declaration as devisees simply, while under the will of James Taylor they are devisees in trust for his grandchildren.

Probably this omission to indicate the nature of their estate is not a legal fault (2 *Chit. Pl.* 469, *note*), but if it be it is purely formal and was rightly treated at the trial as the subject of amendment.

The second ground upon which a new trial is asked is that, by force of a certain contract between the plaintiffs and Isaac Davis, the maker of the notes, and others, the defendants, who stand only in the stead of James Taylor, the endorser, were discharged. The following is a copy of the contract:

"Agreement made this first day of March, eighteen hundred and eighty-eight, between Weston Dodson, Truman M. Dodson and Charles M. Dodson, partners, trading under the firm name of Weston Dodson & Company, of the first part, and the Davis & Dowd Pottery Company, Isaac Davis, John O'Dowd and William P. O'Dowd, of the second part.

" Whereas, the said party of the first part holds and owns the promissory notes of the said Isaac Davis, endorsed by James Taylor, deceased, late of Chambersburg, New Jersey, as follows, viz. :

*27 Vroom.* Dodson v. Taylor.

| | | | |
|---|---|---|---|
| Note due Sept. 12, 1887 (bal.)..... | $800 | Interest to date...... | $22 16 |
| Note due Sept. 23, 1887 (bal.)..... | 1,250 | Interest to date...... | 33 12 |
| Note due Sept. 28, 1887............. | 1,000 | Interest to date...... | 25 66 |
| Note due Oct. 11, 1887...... ...... | 750 | Interest to date...... | 17 63 |
| Note due Nov. 5, 1887............. | 1,275 | Interest to date...... | 24 65 |
| Note due Nov. 22, 1887............. | 1,900 | Interest to date...... | 31 33 |
| Note due Dec. 9, 1887............. | 1,175 | Interest to date...... | 16 06 |
| Note due Dec. 13, 1887............. | 1,925 | Interest to date...... | 23 42 |
| | $10,075 | | $194 53 |
| | 208 05 | Protests......... | 13 52 |
| | $10,283 05 | | $208 05 |

"And whereas, it is desired by the parties of the second part that the time for the payment of the moneys due on said notes should be extended, the said Davis & Dowd Pottery Company having agreed with the said Isaac Davis to assume his indebtedness thereon : Now, therefore, these presents witness, that in consideration of the premises, and of the sum of one dollar to them in hand paid by the party of the first part, the receipt whereof is hereby acknowledged, the said parties of the second part agree with the said party of the first part as follows, for themselves and their respective heirs, executors administrators and successors : The said Davis & Dowd Pottery Company agrees to give to the said party of the first part its promissory notes, endorsed by the said Isaac Davis, John O'Dowd and William P. O'Dowd, as follows, viz. : One note, dated March 1st, 1888, for thirty-four hundred dollars, payable two months after the date thereof; another note of the same date, for thirty-four hundred dollars, payable three months after date, and another note of the same date, for thirty-six hundred and forty-five dollars and eighty-six cents, payable four months after date; and it further agrees, that as each of said notes shall fall due and become payable it will pay ten per cent. of the amount due on such note, in cash, and will give the parties of the first part a note similarly endorsed, for the balance of the moneys due on such note, together with legal interest on such balance for the time when such note shall run, which time shall not be more than four

months; and it further agrees, that as each of such renewal notes shall fall due and become payable, it will pay ten per centum of the amount due thereon in cash, and give its note, similarly endorsed, for a like time for the balance of the moneys due thereon, with interest thereon, for the time such note shall run; and so on, it will continue to partly pay and renew such notes until all the moneys due and to grow due thereon shall be fully paid, in the manner above set out; and the said Isaac Davis, John O'Dowd and William P. O'Dowd agree with the parties of the first part that they will severally endorse each note to be given under this agreement to the said parties of the first part by the said Davis & Dowd Pottery Company, and to stand responsible for the full payment of the moneys due and to grow due thereon to the parties of the first part, their executors, administrators and assigns; and it is further understood and agreed, by and between the parties hereto, that the notes first above specified to be given by the said Davis & Dowd Pottery Company to the party of the first part, and endorsed as aforesaid, are to be given *further to secure* the payment of the said sum of ten thousand two hundred and eighty-three dollars and five cents, due, as aforesaid, on the day of the date of these presents, together with interest thereon for the term of ninety-five days, such interest amounting to the sum of one hundred and ninety-two dollars and eighty-one cents, making in all the sum of ten thousand four hundred and forty-five dollars and eighty-six cents; and that all such renewals thereof are to be given for the like purpose; and it is distinctly stipulated and agreed that they shall, and the parties of the first part expressly hereby reserve the right to hold the said notes endorsed by the said James Taylor, deceased, together with all their rights on such notes and endorsements, against the said Isaac Davis and the representatives, heirs and devisees of the said James Taylor, deceased, both at law and in equity, including the right to collect the moneys due and to grow due on the said notes from the estate and assets of the said James Taylor, deceased, in whosoever's hands the same may be found.

"And the parties of the first part agree to accept the notes above mentioned to be given by the said Davis & Dowd Pottery Company, and endorsed as aforesaid, and the said renewals thereof, provided that upon the failure of any of the parties of the second part to carry out the terms of this agreement by making and endorsing such renewal notes, making such cash payments thereon, and by doing all other things herein mentioned to be done by them, the parties of the first part, their executors, administrators or assigns, may, at their option, at any time, and without notice, terminate this agreement and proceed to the immediate collection of the moneys due and to grow due on the said notes as fast as the said notes shall fall due and become payable, anything herein contained to the contrary notwithstanding.

" In witness whereof the said Davis & Dowd Pottery Company has caused its president to sign his name hereto and affix the common corporate seal of said company, and the other parties hereto have signed their names and affixed their several seals the day and year first above written.

" Witness :

| " JOSIAH BACHMAN, | WESTON DODSON, | [L. S.] |
| " WM. C. TAYLOR. | TRUMAN M. DODSON, | [L. S.] |
| | " CHARLES M. DODSON. | [L. S.] |

[SEAL.]          " DAVIS & DOWD POTTERY CO.,
                        " ISAAC DAVIS, *President.*

| " JOS. K. JONES. | ISAAC DAVIS, | [L. S.] |
| | " JOHN O'DOWD, | [L. S.] |
| | " WILLIAM P. O'DOWD." | [L. S.] |

The defendants insist that this contract amounted to a valid agreement between the plaintiffs and their primary debtor to extend the time of payment of the debts now in suit, and hence released the sureties, the defendants.

But a careful perusal of this contract will disclose that it contains no stipulation for an extension of time. While it recites that the parties of the second part desire such exten-

sion—and it may be assumed that they entered into the new arrangement with that object in view—yet the plaintiffs did not thereby fasten upon themselves any legal obligation to grant an extension, but, on the contrary, sedulously guarded against any possible inference of such an obligation by expressly reserving the right to hold the notes endorsed by James Taylor, together with all their rights on such notes and endorsements, both at law and in equity. Looking at the whole instrument, it is clear that the plaintiffs were to accept the new notes to be given by the parties of the second part, not in lieu of or suspension of the old notes, but in addition to them, as a *further security,* and that the parties of the second part trusted, not to any legal change in the rights and remedies of the plaintiffs on the old notes, but to such indulgence as creditors are likely to exercise when they feel assured of ultimate payment. The case seems on all fours with *Firemen's Insurance Co.* v. *Wilkinson,* 8 *Stew. Eq.* 160, and must be decided in accordance with that precedent. This contract did not discharge the defendants.

The next reason urged for the granting of a new trial is that proper notice of non-payment was not given.

By a comparison of dates already mentioned, it will be seen that James Taylor, the endorser, died before the maturity of any of the notes. On October 31st, 1887, after the maturity of the first four notes and before the maturity of the last four, his will was proved in Mercer county and letters testamentary were issued to the executors named therein, one of whom was Isaac Davis, the maker of the notes.

The only evidence of notice of non-payment given to bind the endorser is contained in the notary's book, which (the notary being dead) was deposited in the office of the clerk of Mercer county, where the notary last resided, and became evidence of the facts legally recorded therein by force of the statute. *Rev., p.* 899, §§ 11, 12. The following show the records with regard to a note maturing before and one maturing after probate, and the other records are similar, *mutatis mutandis :*

"CITY OF TRENTON, N. J., Sept. 23, 1887.

"*Mess. Weston Dodson & Co.:*

"Please take notice that a promissory note made by Isaac Davis for fourteen hundred dollars, in favor of James Taylor, dated Trenton, N. J., May 20, 1887, payable four months after date, at the Mechanics' National Bank, at Trenton, and endorsed by you (payment having been demanded and refused), was this day protested for non-payment, and the holder looks to you for payment thereof.

"JOSEPH H. HOUGH,
"*Notary Public.*"

"The above is a true copy of the notices which I sent to the maker and endorsers of the promissory note, the protest of which is recorded on the opposite page, by depositing them in the Trenton post office this day, at 7.20 o'clock P. M., with the postage prepaid, directed as follows :

"Upon Isaac Davis, Trenton, N. J.

"     James Taylor, Clinton St., Chambersburg, Trenton, N. J.

"     Mrs. Mary A. Taylor, "        "        "

"     Mrs. Sarah M. Price, Trenton, N. J.

"     "     Mary E. Severs,

"     Wm. F. T. Lawton,   ⎫

"     Mary A. T. Lawton,   ⎬   Enclosed to George Lawton, Chambersburg, Trenton,

"     Ella F. T. Lawton,     ⎬   N. J.

"     Thomas T. Lawton,   ⎭

"     Weston Dodson & Co., Bethlehem, Pa.

"Received and payment demanded at 3.40 o'clock P. M.

"JOSEPH H. HOUGH,
"*Notary Public.*"

"CITY OF TRENTON, N. J., Nov. 22, 1887.

"*Mess. Weston Dodson & Co.:*

"Please take notice that a promissory note made by Isaac Davis for nineteen hundred dollars, in favor of James Taylor, dated Trenton, N. J., July 19, 1887, payable four months

after date, at the Mechanics' National Bank, at Trenton, N. J., and endorsed by you (payment having been demanded and refused), was this day protested for non-payment, and the holder looks to you for the payment thereof.

"JOSEPH H. HOUGH,
"*Notary Public.*"

" The above is a true copy of the notices which I sent to the maker and endorsers of the promissory note, the protest of which is recorded on the opposite page, by depositing them in the Trenton post office this day, at 5.47 o'clock P. M., with the postage prepaid, directed as follows :

"Upon Isaac Davis, Trenton, N. J.
"    Isaac Davis, Exr. of James Taylor, dec'd, Trenton, N. J.
"    James R. Severs, Exr., &c., of James Taylor, dec'd,   "
"    George S. Price, Exr., &c., of James Taylor, dec'd,   "
"    Weston Dodson & Co., Bethlehem, Pa.

" Received and payment demanded at 3.30 o'clock P. M.

"JOSEPH H. HOUGH,
"*Notary Public.*"

Counsel for the defendants read these records as stating that every notice mailed was addressed at its heading to " Mess. Weston Dodson & Co." We do not so read them. We understand them to mean that a notice like the one set out was addressed to each person named at the foot of the record, just as that notice was addressed to " Mess. Weston Dodson & Co."

We therefore find in the record, evidence that, with regard to each note maturing before probate of the will of James Taylor, the endorser, notice was mailed, addressed to him and directed to his last place of residence; and with regard to the notes maturing after probate, notice was mailed, addressed and directed to each of his executors, at the residence of each. This method of giving notice was in every instance correct.

When the endorser is dead and there are no personal representatives, or none can be discovered by resonable diligence, then notice of dishonor should be addressed to the endorser at his last place of abode. *Stewart* v. *Eden*, 2 *Cai.* 121; *Merchants' Bank* v. *Birch*, 17 *Johns.* 25; *Linderman's Executors* v. *Guldin*, 34 *Pa. St.* 54; *Edw. Bills & N.* 631; *Dan. Neg. Inst.*, § 1001. But when there are personal representatives and they are known or discoverable by due diligence, then notice must be given to them. *Oriental Bank* v. *Blake*, 22 *Pick.* 206; *Smalley* v. *Wright*, 11 *Vroom* 471; *Story Prom. N.*, § 310; *Edw. Bills & N.* 631; *Dan. Neg. Inst.*, § 1000; *Chit. Bills* *295.

But as to the notices sent to the executors, the defendants object that they did not afford the necessary information, because they referred to the notes as being "endorsed by you," *i. e.*, the person addressed.

The law requires that the notice should describe the dishonored paper with such particularity as will apprise the person to whom the notice is given of the instrument in question. *Howland* v. *Adrain*, 1 *Vroom* 41; *McGeorge* v. *Chapman*, 16 *Id.* 395.

The present notices correctly stated every other particular of the notes, including the fact that they were drawn in favor of James Taylor, and added that the holder looked to the executors of James Taylor for payment. This would, I think, fairly apprise these executors, conscious that they had not themselves endorsed the notes, that they were to be held as executors on the endorsement of their testator. Certainly to Isaac Davis, one of the executors and the maker of the notes, complete information must have been afforded by the notice; and due notice to one of several executors is sufficient. *Shoenberger's Executors* v. *Lancaster Savings Institution*, 28 *Pa. St.* 459; *Story Prom. N.*, § 310; *Edw. Bills & N.* 631; *Dan. Neg. Inst.*, § 1000.

We consider the notices sufficient in substance and properly given.

The rule to show cause should be discharged.